---

## In re V. D. L. CO.

(District Court, N. D. Georgia. August, 1909.)

1. LANDLORD AND TENANT (§ 80½*)—LEASES—ASSIGNMENT—CONSENT OF LANDLORD—FINDINGS.

    Evidence *held* to sustain a referee's finding that a lessor consented to an assignment of the lease to a corporation.

    [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 80½.*]

**2.** LANDLORD AND TENANT (§ 75*)—ASSIGNMENT OF LEASE—CONSENT OF LESSOR —STATUTES.

Where a landlord, pursuant to a conversation had with several Greeks to whom he had rented the premises, and who could not understand English, but spoke through an interpreter, knew that they believed he had consented to a transfer of the lease to a corporation which they had formed to continue a business transacted on the rented premises, and stated that he told them that they could not continue to stay there under any lease arrangement "they might think they had," but could continue to stay from month to month paying rent as theretofore, the landlord would be held to have consented to the transfer as a matter of law under Civ. Code Ga. 1895, § 3674, providing that, if the intention of the parties to a contract differ among themselves, the meaning placed on the contract by one party known to be thus understood by the other at the time shall be held to be the true meaning.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 75.*]

**3.** LANDLORD AND TENANT (§ 112*)—LEASE—RENT—FORFEITURE FOR NONPAYMENT.

Where, notwithstanding the assignee of a lease was in arrears for rent to the amount of $850, the landlord made no effort to dispossess it, but continued to collect rent until a few days before he filed a petition against the corporate assignee in bankruptcy, and no demand was made at any time for the surrender of the duplicate lease, the corporation was warranted in believing that the landlord had waived his right to declare the lease forfeited, and that his statement that it could no longer stay under the lease, and that he was going to mark his end thereof canceled, and that the corporation better do the same, was a mere threat to induce the payment of the amount due.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 112.*]

**4.** BANKRUPTCY (§ 350*)—LANDLORD'S CLAIM FOR RENT—PREFERENCE.

A landlord's lien for rent is superior to the claims of general creditors of the bankrupt in the administration of the latter's estate in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 350.*]

In Bankruptcy. In the matter of the bankruptcy of the V. D. L. Company. Petition of W. F. Winecoff to review the decision of the Honorable P. H. Adams, Referee, declaring a lease to constitute an asset of the bankrupt's estate. Affirmed.

Wimbish, Watkins & Ellis, for intervener.
Smith, Hammond & Smith and Moore & Pomeroy, for trustee.

SPEER, District Judge. On May 26, 1909, W. F. Winecoff, A. Fugazzi, and the Wiley Manufacturing Company brought a petition in bankruptcy against the V. D. L. Company, a corporation, with its principal office in the city of Atlanta. In this petition it was alleged that the V. D. L. Company was indebted to W. F. Winecoff in the sum of $625 "for rent," and to A. Fugazzi $17.75 and the Wiley Company $39.08 for merchandise. The petition is sworn to only by Winecoff. Attached to the petition is a written acknowledgment of its inability to pay its debts and its willingness to be adjudicated bankrupt, signed by the V. D. L. Company by Tom Antonopoulos. The V. D. L. Company was duly adjudicated a bankrupt, and J. J. Goodrum elected trustee.

The trustee filed a petition with the referee, wherein he alleged that the V. D. L. Company was the owner, by transfer, of a lease from

said W. F. Winecoff of the storehouse in which the said V. D. L. Company was doing business, and praying that Winecoff be required to answer such rule, and that the trustee be declared to have a leasehold estate in the premises described in the lease, a copy of which was attached to the petition. Winecoff answered the rule, and denied that the V. D. L. Company had any leasehold interest in said premises, but, on the contrary, were only tenants at will. Testimony was offered by both sides, and, after considering the same, the referee found that the V. D. L. Company were the owners of the leasehold at the time of the bankruptcy, and that the same was an asset of the bankrupt estate in the hands of the trustee. Winecoff thereupon brought a petition for review of the decision of the referee, in which numerous grounds of error are alleged. The court will consider only two of the grounds, which are considered controlling.

1. The first ground of error alleged is that the referee erred in finding as a matter of fact that Winecoff had consented to an assignment of the lease to the V. D. L. Company. The testimony shows that the lease was made on September 28, 1906, by W. F. Winecoff, on the one hand, and V. Petropol and Cris Cochakos, on the other, for a term of five years, two months, and seventeen days, commencing February 13, 1907, and ending April 30, 1912, at a rental of $125 per month. The usual stipulations are contained therein; among them being a provision that the lessees shall not subrent without the written consent of the lessor.

On September 29, 1906, Cochakos entered thereon his assignment of his half interest in the lease to John Antonopoulos, which is followed by an entry by Winecoff, of date March 26, 1907, agreeing "to the above transfer."

On February 20, 1908, V. Petropol and John and Thomas Antonopoulos petitioned Fulton superior court to be incorporated as the "V. D. L. Company," and on March 30, 1908, they were incorporated accordingly, with a capital stock of $15,000, and authorized to carry on the business of selling soda water, soft drinks, candies, cigars, tobacco, and kindred commodities. The incorporators met on April 25, 1908, and accepted the charter and organized the corporation, elected officers, adopted by-laws, etc. On the same day, to wit, April 25, 1908, Petropol and John Antonopoulos executed an assignment and transfer of said lease to the V. D. L. Company.

On May 11, 1908, a meeting of the stockholders of the company was held, and it was announced by the three original stockholders that they had sold all of the capital stock of the company to Victor Brown, Thomas Antonopoulos, George Antonopoulos, and John Mendes. Victor Brown was thereupon elected president and treasurer, and Thomas Antonopoulos secretary of the company.

Thereafter, Victor Brown, as president of the company, together with five other Greeks, called on Winecoff for the purpose of obtaining his written consent to the transfer of the lease to the V. D. L. Company. As to what transpired on this occasion is testified to by three witnesses, Victor Brown and Charles Mendes, for the trustee, and W. F. Winecoff, the respondent.

Brown testified, through an interpreter, that he with five other

Greeks, took the lease to Mr. Winecoff to get his consent to the transfer to the V. D. L. Company. "When we asked Mr. Winecoff about the transferring of the lease, Mr. Winecoff had some differences with Mr. Petropol at the time over some money matters, and, after he give him the amount of money required, then he made the transfer. I couldn't understand it well enough to say all about it, but we had this bookkeeper as interpreter, and, of course, it is on the strength of this interpretation. After he wrote this I put it in my pocket. Mr. Winecoff consented to the transfer. He just wrote on the bottom of the lease. Petropol owed Winecoff a debt of about $146. I saw the check was made out by Paulos for Mr. Winecoff."

Charlie Mendes testified that he was one of the party that went to Mr. Winecoff's office to get him to consent to the transfer to the V. D. L. Company; that he saw Pete Paulos give him a check, then he signed the transfer.

W. F. Winecoff testified that several of the Greeks came and asked him to agree to the transfer, which he declined to do, that he thought he had a good lease, and he was not going to take a corporation that he did not know anything about; that he did not want to turn them out, so he told them they could stay there from month to month and pay their rent through the other fellow; that they could continue to stay there. "They were a little backward in paying their rent from time to time. In January they couldn't pay, and then along the latter part of February I went down there, and I said to John Antonopoulos and Tom (they were the ones that I supposed was in charge, supposed to be, they were running the place) and told them that they couldn't continue to stay there under any lease arrangements that they might think they had, that I was going to mark my end of the lease canceled, and they had better do the same thing with theirs."

Winecoff collected rent regularly from the V. D. L. Company for nearly a year. The Greeks evidently believed that Winecoff had consented to the transfer, he having required them to pay to him $146, the debt of another person for which they were not liable; and Winecoff evidently knew that the Greeks considered that he had consented, for he testifies that he told "them that they could not continue to stay there under any lease arrangement that they might think they had." This being true, as a matter of law Winecoff will be held to have consented.

Code Ga. 1895, § 3674, provides:

"The intention of the parties may differ among themselves. In such cases, the meaning placed on the contract by one party, and known to be thus understood by the other party at the time, shall be held as the true meaning."

2. The other controlling question in the case is whether or not Winecoff had exercised the option contained in the lease, to wit:

"On failure to pay same promptly when due, said party of the first part has the right, at his option, to declare this lease void, cancel the same, and take possession of the premises without notice to said second parties, it being agreed that time is of the essence of this contract."

Winecoff testified, that "along the latter part of February I went down there, and I said to John Antonopoulos and Tom * * * that they couldn't continue to stay there under any lease arrangements that

they might think they had, that I was going to mark my end of the lease canceled, and they had better do the same thing with theirs." That at that time they owed him $850 for rent. No effort whatever was made by Winecoff to dispossess the V. D. L. Company, and he continued to collect the rents from them as theretofore, and collected $150 from them on account of rent a few days before he himself brought a petition against them in bankruptcy. No demand was made upon them for the surrender of their duplicate lease contract. Such conduct on the part of Winecoff was sufficient to authorize the V. D. L. Company in believing that Winecoff had waived his right to declare a forfeiture of the lease contract, and the statement quoted above was intended simply as a threat in order to collect the amount due.

This lease is the main asset of the bankrupt estate. If their soda water apparatus and other fixtures are sold with the lease, they will bring an amount sufficient to pay general creditors something; otherwise they will receive nothing. Winecoff, who is himself a leaseholder, was willing to accept the sum of $425 per month for the rent of this store for a term of years. If the lease is sold by the trustee, the purchaser will be bound to carry out the terms of the lease, and Winecoff will receive the amount of rent he has agreed to accept. The referee directed that he should be paid as a preferred creditor all of his past-due rents, evidently following the decision in the case of In re Burns, Bankrupt (decided by the District Court for the Southern District of Georgia on June 8, 1909) 175 Fed. 633; the court holding in that case that the landlord's lien for rent is superior to the claims of general creditors in bankruptcy cases.

The referee heard all of the testimony, saw the manner of the witnesses on the stand, and from a reading of the testimony sent up in the record the court cannot say that his findings are without evidence to support them.

Let the decision of the referee be affirmed.